**Barbara A. ALSTON, Appellant,**

**v.**

**Joanne A. BARNHART, Commissioner of Social Security, Appellee**

No. 02–1939.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit L.A.R. 34.1(a) Jan. 28, 2003.

Decided Jan. 29, 2003.

Before: SLOVITER and RENDELL,

Circuit Judges, and DEBEVOISE,* Senior District Court Judge.

## OPINION OF THE COURT

DEBEVOISE, Senior District Court Judge.

Appellant, Barbara A. Alston, appeals from a judgment of the District Court that affirmed the decision of the Administrative Law Judge (ALJ) denying Alston's claim for disability insurance benefits and supplemental security income. We conclude that the ALJ's finding that Alston was not disabled because she was capable of performing medium work and her past relevant work as a hospital nutritionist was supported by substantial evidence, and we will affirm.

### I. *Background*

At the time of the ALJ decision Alston was fifty-five years of age. She had worked for 22 years as a nutritionist for a hospital, preparing food, arranging catering and preparing memos. She last worked on July 7, 1998 when her employer terminated her after smelling alcohol on her breath. Alston asserts that her disability commenced the same day. She filed an application for a period of disability benefits on May 20, 2000, which was denied by the Pennsylvania State Agency. Alston appealed and a hearing was held before an ALJ. The ALJ determined at step 4 of the evaluation process that Alston has the residual functional capacity for medium work and was able to perform her past relevant work as a hospital nutritionist. He held, therefore, that she was not entitled to a period of disability or Disability Insurance Benefits.

Alston testified that pain in her neck, back and legs and arthritis in her hands precludes her from working. She formerly took Motrin which helped her pain and started taking Relafen a week before the hearing. She takes medication to control her blood pressure, cholesterol and diabetes. Alston began treating at the Western Psychiatric Institute and Clinic in October 2000 to help her deal with her feelings of depression, attributed to the deaths of several family members. She takes Buspar as needed for nervousness and Zoloft to help her sleep. She testified that the medications help her depression, and therapy helps her a "great deal."

There is evidence that Alston walked a mile every day, took care of household chores and went grocery shopping, although at the hearing she testified that she could stand for only a half hour and walk about two blocks. She lives with a friend/landlord who has had a stroke and for whom she cooks and renders care. She can use public transportation.

Alston's treating physician is John C. Hairston, M.D. who has attended to her since 1991 for hypertension, diabetes and high cholesterol. In July 1999 Alston was referred to West Penn Comprehensive Health Care where she was examined by Frank H. Kush, M.D. who prescribed additional blood pressure medication and reported a normal neurological examination. Further examinations disclosed discogenic and degenerative changes at C4–5 and C–6, diffuse scattered para-cervical tenderness and minimal para-thoracic tenderness, no tenderness in her cervical spine and adequate grip strength and range of motion in her neck with some pain produced at extreme ranges.

* Honorable Dickinson R. Debevoise, Senior United States District Judge for the District of New Jersey, sitting by designation.

When Alston next returned to West Penn in May 2000 she sought papers needed for welfare benefits, and John Baron, M.D. reported that she was permanently disabled due to diabetes, hypertension, gout, anxiety and arthritis.

In June, 2000 she underwent further examinations which disclosed nothing new or remarkable. In July 2000 Alston reported feeling stressed and depressed due to her friend's recent stroke. Thereafter she received several psychiatric examinations during which Hari Vemulapalli, M.D., a psychiatrist, declined to restart Alston on Zoloft because she seemed to be doing fairly well. In January 2001 Alston was again prescribed Zoloft by another physician and her mood improved.

## II. *The ALJ's Decision*

The ALJ, finding that Alston had not engaged in substantial gainful activity since July 7, 1998 when she was discharged from her job, concluded that "[a] review of the medical evidence confirms that Ms. Alston has arthritis and hypertension, impairments which are 'severe' in that they have more than a minimal effect on her ability to meet some of the basic demands of work." (Record, p. 9). However, at step 3 of the evaluation process the ALJ found that there was no evidence of an impairment or combination of impairments meeting or equaling the requirements of conditions listed in Appendix 1 to Subpart P. Regulations Number 4.

The ALJ found Alston's allegations regarding her physical limitations to be not totally credible, and he gave little weight to the form that Dr. Baron completed

which indicated that Alston was permanently disabled. He concluded that Alston had the residual functional activity for medium work and (at step 4 of the evaluation process) that Alston was able to perform her past relevant work as a food nutritionist at a hospital.

## III. *Alston's Contentions*

Alston contends that the ALJ's findings that she had the ability to perform a full range of medium work and that she could return to her past relevant work as a food nutritionist were not supported by substantial evidence. Alston points to the litany of ailments and disabilities from which one or another of the medical reports confirm that she suffered, i.e., discogenic degenerative changes of the cervical spine at C–4, C–5 and C–6, arthritic disease of the neck, back and hands, hypertension and anxiety and depression. She relies heavily on Dr. Baron's opinion that she was permanently disabled, noting that the opinion of a treating physician is entitled to more weight than that of a consultative examiner, *Adorno v. Shalala,* 40 F.3d 43 (3d Cir.1994). Further, Alston, by implication, if not explicitly, challenges the ALJ's finding that she was not fully credible.[1]

## IV. *Discussion*

We have jurisdiction of this appeal under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291. The scope of review is limited to whether the Commissioner's decision is supported by substantial evidence.

We have reviewed the ALJ's decision and the record and conclude that his findings were supported by substantial evi-

---

1. Alston's reliance on the Medical Vocational Guidelines is misplaced. The grids, which take into account vocational factors such as age, education and work background are only relevant at step five of the evaluation process in determining whether other work exists in the national economy that a claimant can perform. 20 C.F.R. §§ 404.1560, 1569. The ALJ did not reach step five, because he decided at step 4 that Alston can perform her past relevant work.

dence. The ALJ referred to significant evidence for rejecting Dr. Baron's opinion of total permanent disability. Dr. Baron's opinion, which was given by checking a box on the form he was asked to complete, is inconsistent with the reports of other physicians who were also treating physicians and physician's assistants and with the reports of consulting physicians. Dr. Gleason stated that Alston had a full range of motion in her neck and in all of her extremities and demonstrated no neurological deficits. He further found that her grip strength was normal and full and she had no problems with fine manipulation. Alston reported that the medication Dr. Dhawan gave her for arthritis worked well for her, and he prescribed Zoloft which improved her mood and enabled her to sleep through the night.

Alston's hypertension and diabetes were reasonably controlled with medication. When Dr. Vemulapalli evaluated Alston in November 2000 he found her to be cooperative, pleasant and in a good mood. Her speech was spontaneous, her thoughts were organized, and she denied any depressive symptoms.

The ALJ had grounds in the records to conclude that Alston's testimony concerning her discomforts and abilities was not fully credible. There were inconsistencies between it and statements she had given on earlier occasions. It was not totally supported by the medical reports. Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make. *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir.1983).

## V. *Conclusion*

For the reasons set forth above we conclude that substantial evidence supported the ALJ's determination that Alston is able to perform her past relevant work and thus is not under a disability. Accordingly we will affirm the district court's order granting the Commissioner's motion for summary judgment.